# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JUSTIN T. WINSTON,

                        Petitioner,

v.                                                    Case No. 20-CV-1835-JPS

JON NOBLE,

                        Respondent.                  **ORDER**

## 1.    INTRODUCTION

On December 11, 2020, Petitioner Justin T. Winston ("Petitioner") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. A notice of appearance by an attorney was entered on Petitioner's behalf in July of 2021, but that attorney has since withdrawn, and Petitioner now proceeds pro se. ECF Nos. 9, 19, 22.

On January 27, 2022, the Court ordered that Petitioner file an amended petition featuring only his exhausted claims. ECF No. 16. Petitioner filed an amended petition on February 7, 2022. ECF No. 18. That amended petition serves as the operative petition in this action. On August 16, 2022, the Court set a briefing schedule in this matter. ECF No. 22. On September 14, 2022, Respondent Jon Noble[1] ("Respondent") filed a motion to dismiss. ECF No. 25. That motion is now fully briefed. For the reasons discussed herein, the Court will grant it.

---

[1] The institution at which Petitioner is currently housed is Kettle Moraine Correctional Institution. The warden of such institution is Jon Noble, not Randall R. Hepp. *See* ECF No. 18 at 1; ECF No. 25 at 1, n.1. The Court will accordingly instruct the Clerk of Court to replace Randall R. Hepp with Jon Noble on the docket.

## 2. STANDARD OF REVIEW

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). But first, under Rule 4, the Court analyzes preliminary obstacles to review, including whether the petitioner has complied with the statute of limitations, exhausted available state remedies, avoided procedural default, and set forth cognizable claims.

## 3. RELEVANT BACKGROUND[2]

The case from which Petitioner's conviction stems is *State of Wisconsin v. Justin T. Winston*, Case No. 2010CF003469 (Milwaukee Cnty. Cir. Ct.), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2010CF003469&countyNo=40&index=0&mode=details. Therein, Petitioner (an African American male) was convicted of First-Degree

---

[2]The following factual background is pulled both from *State v. Winston*, 905 N.W.2d 843 (Wis. Ct. App. 2017) and the docket of *State of Wisconsin v. Justin T. Winston*, Case No. 2010CF003469 (Milwaukee Cnty. Cir. Ct.), *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2010CF003469&countyNo=40&index=0&mode=details.

Intentional Homicide and of Possession of a Firearm By a Felon. His jury trial began on July 12, 2011 and continued for over two weeks, concluding on July 27, 2011. He was found guilty on the two aforementioned counts.[3]

During the jury selection process of his trial, the trial court struck several potential jurors for cause. *Winston*, 905 N.W.2d, ¶ 2. Thereafter, Winston and the State were afforded seven peremptory strikes each. *Id*. Each side exercised all seven of their peremptory strikes, at which point the State told the court: "Judge, at this point I do want to preserve a motion based on *Batson*, I think I have to preserve it as soon as it happens with the defense. We can deal with it after we're done here." The court responded: "All right. It's preserved." Petitioner's counsel made no comment at that time.

Later, following the selection of the jury but before their swearing in, the court addressed the State's *Batson* issue. *Id*., ¶ 3. The following exchange occurred:

> **[The State]:** Judge, I will just make my record[,] and this is very unusual. I don't think I've ever brought this motion on behalf of the State before, but the record is going to reflect that there are no African-Americans on this jury panel. The—
>
> **[The Court]:** Just so the record is clear even though I believe there were at least four to five that were on the larger panel.
>
> **[The State]:** Yes, there were. The defense chose—and they may have a reason—but they chose to strike three or four African-Americans on this jury panel, the State struck one; and I want the record to reflect for the appellate courts that it was the defense that struck three or four African-Americans in this case and that is the reason why there are no African-Americans on this jury panel. Now, there may be a strategic reason for this, certainly the defense may have reasons for it,

---

[3]He was found not guilty of a third count of First-Degree Intentional Homicide.

but I don't want this coming back saying that the State was the one that struck the African-Americans; it was the defense that did that.

**[The Court]:** So let's put all this to bed. Let's have each of the parties give their race-neutral reasons for striking the people that they struck, let's just make our record of all of that so we don't have an issue with regard to that.

*Id.* The State then provided its race-neutral reasons for exercising a peremptory strike on Juror Number 27 (an African-American individual). They included "the man's age, employment, jewelry, and the fact that he 'was sighing' during the jury selection process." *Id.*, ¶ 4. After hearing this explanation, Petitioner's trial counsel stated, "[w]ell, maybe I should formally say out loud that I am challenging their striking of Juror 27 and I believe their reasons are insufficient." *Id.*

Petitioner's trial counsel then provided its explanations for the use of three of its peremptory strikes on African-American individuals. One such explanation was that the individual had been a victim of an armed robbery. *Id.*, ¶ 5. After hearing these explanations, the court concluded that it "appear[ed]" that all the strikes [were] race-neutral." *Id.* The State agreed and stated that it didn't "have an objection." *Id.* The court expressed that it questioned Petitioner's counsel's decision to strike three African-American individuals from the jury, but stated that it "did not believe it needed to start over with jury selection" "as long as the defendant himself agree[d] with" the strategy. *Id.* Petitioner told the court that he agreed with his counsel's jury selection strategy. *Id.* As to Petitioner's counsel's earlier objection as to Juror Number 27, he offered no additional comments or argument and did not ask the court to take testimony or make any factual

findings with respect to the striking of that juror. *Id.* The *Batson* issue was not again raised at trial.

The Milwaukee County Circuit Court sentenced Petitioner on September 30, 2011 to life in prison without eligibility for extended supervision. Also on September 30, 2011, the Milwaukee County Circuit Court entered a judgment of conviction as to Petitioner.

On February 11, 2013, Petitioner moved to vacate the judgment of conviction and sentence and for a new jury trial.[4] But on February 12, 2014, Petitioner moved to dismiss his motion without prejudice and for an extension of time within which to file a new postconviction motion or notice of appeal. On April 7, 2014, the Wisconsin Court of Appeals deemed the appeal voluntarily dismissed. On March 23, 2015, Petitioner filed a new motion to vacate the judgment of conviction and sentence and to dismiss the criminal charges against him with prejudice, or, in the alternative, for a new trial.

The circuit court denied the motion on June 25, 2015. On July 13, 2015, Petitioner filed a notice of appeal. The direct appellate case that followed was Case No. 2015AP1419-CR. The Wisconsin Court of Appeals affirmed Petitioner's judgment of conviction and sentence on October 12, 2017. In its decision and order, the Wisconsin Court of Appeals discussed the circumstances surrounding the *Batson* issue at trial. The Wisconsin Court of Appeals acknowledged that Petitioner's postconviction motion (which the trial court had denied) alleged that "the State used racial discrimination when it used a peremptory challenge to strike an African-

---

[4]He did so after receiving multiple extensions of the deadline within which to file a postconviction motion or notice of appeal.

Case 2:20-cv-01835-JPS   Filed 03/27/23   Page 5 of 22   Document 34

American juror." *Winston*, 905 N.W.2d, ¶ 7. The Wisconsin Court of Appeals noted Petitioner's arguments on appeal as follows:

> [T]he trial court erred when it decided that there was no *Batson* violation at the jury trial and when it denied [the] postconviction motion on this issue . . . . [T]he State struck Juror 27 from the jury on account of his race . . . . [T]he State improperly supplemented the record in its response to Winston's postconviction motion by providing additional explanation for the State's decision to strike Juror 27 . . . . [I]f [Winston] is held to have forfeited his Batson challenge, then his trial counsel was ineffective for not properly raising the issue.

*Id.*, ¶ 12 (internal quotation marks omitted). Ultimately, the Wisconsin Court of Appeals concluded that "Winston did not properly raise or preserve a *Batson* challenge during the trial." *Id.*, ¶ 13. "Winston did not raise the issue with the trial court . . . . [T]rial counsel offered a one-sentence objection to the State's explanation." *Id*. And "after the trial court declared 'it appears that all the strikes are race-neutral,' trial counsel did not disagree with that assessment, ask the trial court to make detailed factual findings about the reasons for the strikes, or ask the trial court to take testimony concerning Juror 27." *Id*. "In short, trial counsel did not ask the trial court to undertake the analysis in step three of the *Batson* test, during which the defense would have had the 'ultimate burden of persuading the court that the prosecutor purposefully discriminated or that the prosecutor's explanations were a pretext for intentional discrimination.'" *Id*. (internal citation omitted). "We conclude that Winston forfeited his *Batson* claim." *Id*.

Next, the Wisconsin Court of Appeals discussed Petitioner's claim of ineffective assistance of counsel. The court concluded that Petitioner's "postconviction motion did not demonstrate that he was prejudiced by his

trial counsel's alleged deficiency." *Id.*, ¶ 17. Specifically, the court wrote that his "postconviction motion and opening appellate brief did not specifically address the second requirement: particular facts or circumstances that raise an inference that the State used a peremptory strike to exclude Juror 27 because of his race." *Id.*

On November 10, 2017, the Supreme Court acknowledged receipt of a Petition for Review. The Supreme Court denied that petition for review on January 10, 2018. *State v. Winston*, 908 N.W.3d 820, ¶ 1 (Wis. 2018).

On October 3, 2018, Petitioner moved for postconviction relief pursuant to Wis. Stat. § 974.06.[5] Just five days later, on October 8, 2018, the court denied the motion. On December 10, 2018, Petitioner appealed the denial of the motion. The appellate case that followed was Case No. 2018AP002377 CRNM. On May 19, 2020, the Wisconsin Court of Appeals affirmed the denial of the motion. Therein, the court noted that Petitioner's "appeal concerned an alleged *Batson* violation during jury selection." ECF No. 26-4 at 2. The court further noted that, in its disposition of the 2017 direct appeal, it had concluded that Petitioner "did not properly raise or preserve a *Batson* challenge during the trial" and that Petitioner had "not demonstrate[d] that he was prejudiced by his trial counsel's alleged deficiency." *Id.* at 3. The court quickly concluded that Petitioner could not "relitigate" the court's conclusion as to the forfeiture of the *Batson* claim. *Id.*

---

[5]A defendant may proceed under this section after the "time for appeal or postconviction remedy provided in [§] 974.02 has expired." *Garcia v. Cromwell*, 28 F.4th 764, 772 (7th Cir. 2022). Section 974.06 permits a prisoner to move the sentencing court to "vacate, set aside or correct the sentence" on the ground that the sentence was imposed in violation of the U.S. Constitution. Wis. Stat. § 974.06(1). It is "Wisconsin's equivalent to a motion for collateral relief under 28 U.S.C. § 2255." *Garcia*, 28 F.4th at 772 (internal citation omitted).

at 4. It similarly declined to address Petitioner's renewed argument that his trial counsel was ineffective in failing to properly raise or pursue a *Batson* claim, again "because Winston cannot relitigate the legal analysis this court employed in his direct appeal." *Id.*

As to the assertion of ineffective assistance of counsel on the part of his postconviction/appellate counsel, the court wrote that it "agree[d] with the State that the prosecutor's questions and statements did not support an inference of discriminatory intent." *Id*. at 7. "We conclude, as we did in Winston's direct appeal, that he has not presented facts supporting a prima facie case of discriminatory intent. Therefore, he cannot demonstrate that he was prejudiced by trial counsel's failure to raise or preserve a *Batson* challenge or postconviction counsel's alleged failure to adequately present those facts as part of Winston's direct appeal." *Id*.

The court at that time also addressed Petitioner's new contentions that the State "improperly vouched" for a witness's out-of-court statement" and "argued facts not in evidence," and that "both trial counsel and postconviction counsel provided ineffective assistance by failing to address the State's improper closing argument." *Id*. at 3–4. As to these, the court concluded that the "new issue that Winston raised in his latest postconviction motion does not have merit" and was therefore "not clearly stronger than the issues postconviction counsel raised." *Id*. at 7. Specifically, the court wrote that "the prosecutor's statements were not improper." *Id*. at 10. "[A]s such," the court concluded, "Winston is not entitled to relief." *Id.* at 7.

Petitioner thereafter filed a "timely but nonconforming petition for review" with the Supreme Court. On October 23, 2020, the petition for

review was denied. Then on December 11, 2020, Petitioner filed the instant motion for a writ of habeas corpus under 28 U.S.C. § 2254.

In his present motion, Petitioner purports to raise four grounds for relief, all of which he represents as having been exhausted.[6] ECF No. 18 at 1. His grounds for relief are provided as follows: first, "Batson violation" ('Ground One'). *Id.* Petitioner argues that the trial court "made an ultimate ruling on the question of discrimination" and that the State "used a racial . . . stereotype" as its purported race-neutral explanation for the use of its strike, which the court should have found "was caused by racial discrimination." *Id.* at 2–3.

As ground two, Petitioner writes "[p]rosecutorial misconduct" ("Ground Two"). *Id.* at 3. He contends that the State "argued matters not in evidence" and erroneously asserted that "Winston's print was fresh on the outside driver's window;" that his "DNA was on that gun;" and that Ricky Grinston ("Grinston") stated "[I]'m gonna be killed by these guys." *Id.*

Third, Petitioner argues ineffective assistance of trial counsel ("Ground Three"). *Id.* at 4. He argues that counsel was "ineffective for not objecting to gender with his Batson challenge, and in the alternative, counsel was ineffective for inadequately raising the Batson claim on race by omitting key arguments on race . . . ." *Id.*

Lastly, Petitioner argues ineffective assistance of postconviction/appellate counsel ('Ground Four"). *Id.* Specifically, he writes that his postconviction/appellate counsel was "ineffective for not

---

[6]That representation appears to be accurate, and in any event, Respondent's motion to dismiss does not challenge Petitioner's habeas motion on grounds of exhaustion. *See* ECF No. 10 at 8 ("Winston appears to have exhausted his remedies as to Grounds One through Four.").

arguing that" his trial counsel was ineffective for the reasons asserted as to Ground Three. *Id*.

In opposition to Petitioner's motion for § 2254 habeas relief, Respondent asserts that Petitioner "procedurally defaulted all four grounds for habeas relief in state court" and that he cannot "establish cause and prejudice or a miscarriage of justice." ECF No. 26 at 1.

## 4.    ANALYSIS

### 4.1    Procedural Default as a General Matter

Even though a constitutional claim in a federal habeas petition has been exhausted, a court is still barred from considering the ground if the petitioner has procedurally defaulted on the claim. *See Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002). A state prisoner procedurally defaults on a constitutional claim in a habeas petition when he fails to raise the claim in the state's highest court in a timely fashion or in the manner prescribed by state law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000). Put otherwise, a petitioner has procedurally defaulted if he "violat[ed] a state procedural rule which would constitute adequate and independent grounds to bar direct review in the United States Supreme Court." BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 9B:1, 1131–32 (2019 ed.). "Thus, a prisoner who fails to satisfy the state procedural requirements forfeits his right to present his claim in federal habeas." *Id*. at 1132. This is so unless the petitioner can show "cause and prejudice or actual innocence." *Id*.

This doctrine applies "regardless of whether the default occurred at trial, on appeal, or on state collateral review." *Id*. A rationale for the doctrine is that "a habeas petitioner who fails to meet the state's procedural

requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.*, § 9B:2, pp. 1133. If the petitioner has actually violated an applicable state procedural rule in presenting his federal claims to the state court(s), the federal court is barred from reviewing the claim in habeas. *See id.*, § 9B:12, pp. 1139. And specifically, "the state court must actually state in plain language that it is basing its decision on the state procedural default and that other grounds are reached only in the alternative." *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir. 1998).

### 4.2    Ground One

As to Ground One, the alleged *Batson* violation, Respondent argues that it has been procedurally defaulted because the Wisconsin Court of Appeals denied it as "forfeited." ECF No. 26 at 3. Indeed, in addressing the issue on direct appeal, the Wisconsin Court of Appeals expressly concluded that Petitioner "forfeited his *Batson* claim" because the issue was not "properly rais[ed] or preserve[d]" at trial. *Winston*, 905 N.W.2d, ¶¶ 12–13.

The Court agrees with Respondent that it should find Ground One "as procedurally defaulted based on the adequate and independent state law ground of forfeiture." ECF No. 26 at 8. To be "adequate," a state procedural rule must be "firmly established and regularly followed." *Lee v. Kemna*, 534 U.S. 362, 376 (2002). A state procedural ground is adequate only where the state court acts "in a consistent and principled way." *Liegakos v. Cooke*, 928 F. Supp. 799, 804–05 (E.D. Wis. 1996) (internal citation omitted). "A basis of decision applied infrequently, unexpectedly, or freakishly may be inadequate, for the lack of notice and consistency may show that the state

is discriminating against the federal rights asserted." *Id.* at 805 (internal citation omitted).

These requirements are met with respect to the doctrine of forfeiture as a general matter. *See Promotor v. Pollard,* 628 F.3d 878, 886–87 (7th Cir. 2010) ("Wisconsin waiver law . . . constitutes an adequate and independent state law ground that cannot be reviewed absent cause and prejudice."); *White v. Miles*, No. 17 C 2517, 2019 U.S. Dist. LEXIS 133076, at *16 (N.D. Ill. Aug. 7, 2019) (citing *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996)) ("Under § 2254, forfeiture is an independent and adequate state ground precluding habeas review.").

Moreover, no other court thereafter substantively addressed the merits of Ground One, so this procedural bar was never removed. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."); *see* ECF No. 26-4 at 3–4 (Wisconsin Court of Appeals reiterating previous conclusion that the *Batson* issue was forfeited).

Petitioner contests the correctness of the Wisconsin Court of Appeal's determination as to forfeiture, *see* ECF No. 28 at 1–2, but "the petitioner may not challenge in the federal proceeding the correctness of the state court's ruling that the petitioner violated the state procedural rule." MEANS, FEDERAL HABEAS MANUAL § 9B:12, 1139. "Whether the state court properly interpreted and applied its procedural rules is solely a state law issue to be decided by the state court." *Id.*

Petitioner also argues that the application of the forfeiture doctrine in this instance was not "firmly established and regularly followed" and was "unexpected and freakish" because there is "no state case law that

states a Batson challenge is not properly raise[d] or preserve[d] during trial because a defendant did not raise it before the State [did]." ECF No. 28 at 2. Firstly, this argument essentially again attempts to contest the "correctness of the state court's ruling" as to forfeiture. MEANS, FEDERAL HABEAS MANUAL § 9B:12, 1139. And secondly, this argument appears to somewhat misstate the bases upon which the Wisconsin Court of Appeals deemed Plaintiff's *Batson* objection forfeited. The court did not deem the issue forfeited solely because Petitioner didn't raise the issue before the State did. Instead, the court based its forfeiture determination on the fact that Petitioner didn't raise the issue, later provided only a "one-sentence objection to the State's explanation," then "did not disagree with" the trial court's assessment that all strikes exercised were "race-neutral," did not ask the court to make factual findings as to the reasons for the strikes, and did not ask the court to take testimony regarding the juror at issue. *See Winston*, 905 N.W.2d, ¶ 13. Based on all of those circumstances, the Wisconsin Court of Appeals deemed the issue forfeited. There is nothing clearly unexpected or freakish about that application of the forfeiture doctrine.

Petitioner's Ground One is procedurally defaulted, and his response in opposition to the motion to dismiss makes no actual argument as to cause and prejudice or actual innocence.[7] The Court will accordingly grant Respondent's motion to dismiss to the extent it seeks dismissal of Ground One based on procedural default.

---

[7]Petitioner mentions at one point in his brief that he has "shown cause and prejudice on grounds (1), (2), and (3)," ECF No. 28 at 13, but this is the only passing reference to those concepts in his briefing. The argument is unsupported and undeveloped.

### 4.3 Ground Two

Petitioner asserts as Ground Two several instances of alleged prosecutorial misconduct. ECF No. 18 at 3–4. This ground was addressed by the Wisconsin Court of Appeals' 2018 order addressing Petitioner's § 974.06 motion. As the Wisconsin Court of Appeals characterized it, Petitioner alleged that the prosecutor improperly vouched for Grinston's statement, argued facts not in evidence, and made various other improper statements. ECF No. 28-1 at 8.

The court cited *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994) for the proposition that a successive postconviction motion such as the one then before the court had to establish a "sufficient reason" for failing to previously "raise any issues that could have been raised in the earlier proceedings."[8] *Id*. at 7. It further wrote that, pursuant to *State v. Romero-Georgana*, 849 N.W.2d 668 (Wis. 2014), the motion had to demonstrate that the new issues raised were "clearly stronger than the issues that postconviction counsel chose to pursue." *Id*.[9] Applying these concepts, the court then concluded that Petitioner's alleged prosecutorial misconduct ground was "not clearly stronger than the issues postconviction counsel

---

[8]The Wisconsin Supreme Court there held that a successive § 974.06 motion "requires a sufficient reason to raise a constitutional issue in [the] sec. 974.96 motion that could have been raised on direct appeal or in a sec. 974.02 motion." *Escalona-Naranjo*, 517 N.W.2d at 185. (emphasis omitted). *See also Garcia*, 28 F.4th at 772 ("[A] prisoner may not raise in a section 974.06 motion a federal constitutional issue that was raised or *could have been raised* in a postconviction motion under section 974.02 or on direct appeal.") (internal citation omitted).

[9]"The Wisconsin Supreme Court's decision in *Romero-Georgana* builds on *Allen* and *Escalona-Naranjo* by elaborating the pleading threshold necessary to justify holding an evidentiary hearing on a prisoner's claim that ineffective assistance of postconviction counsel is a sufficient reason to excuse his procedural default." *Garcia*, 28 F.4th at 773.

Case 2:20-cv-01835-JPS    Filed 03/27/23    Page 14 of 22    Document 34

raised," and that it therefore did not constitute a "sufficient reason" under *Escalona-Naranjo*. *Id.*

Respondent asserts that Ground Two is procedurally defaulted because the Wisconsin Court of Appeals addressed the ground pursuant to *Escalona-Naranjo* and *Romero-Georgana*, both of which constitute independent and adequate grounds pursuant to *Garcia v. Cromwell*, 28 F.4th 764 (7th Cir. 2022). Respondent is correct. The Wisconsin Court of Appeals relied expressly on *Escalona-Naranjo* and *Romero-Georgana* in denying this aspect of Petitioner's § 974.06 motion. And in 2022, the Seventh Circuit in *Garcia v. Cromwell* held that reliance on *Escalona-Naranjo* and *Romero-Georgana* are "independent and adequate state procedural grounds."[10] *Garcia*, 28 F.4th at 767.

As in *Garcia*, Petitioner's dispute "centers on whether the rules announced in [*Escalona* and *Romero*] are truly independent of the merits." *Id.* at 774. Petitioner argues that Ground Two is not procedurally defaulted because the Wisconsin Court of Appeals, in determining that the ground was not "clearly stronger" than that which was raised by postconviction counsel, discussed the ground's merits and clearly made a "ruling . . . on the merits." ECF No. 28 at 11–12. This and similar arguments are rejected by the Seventh Circuit. *See Garcia*, 28 F.4th at 774 (rejecting petitioner's argument that application of the procedural standard is "too entangled

---

[10] "Adequacy in this context," the Seventh Circuit wrote, "requires that the state-law ground be 'firmly established and regularly followed' and not applied in a way that imposes 'novel and unforeseeable requirements without fair or substantial support in prior state law' or 'discriminate[s] against claims of federal rights.'" *Garcia*, 28 F.4th at 775 (internal citation omitted). "We have little difficulty concluding that *Escalona-Naranjo* and *Romero-Georgana* are 'firmly established and regularly followed' rules of Wisconsin postconviction procedure." *Id.*

with the merits of [the] federal claims to be an independent basis for the state court's decision").

For these reasons, the Court will grant the motion to dismiss to the extent that it seeks dismissal of Ground Two based on procedural default.

### 4.4    Ground Three

As to Ground Three, that of alleged ineffective assistance of trial counsel, Respondent argues that it has been procedurally defaulted because the Wisconsin Court of Appeals denied it as "inadequately pleaded." ECF No. 26 at 3. To reiterate, Petitioner asserts in Ground Three that his trial counsel was ineffective for "not objecting to gender with his Batson challenge" or, alternatively, was "ineffective for inadequately raising the Batson claim on race." ECF No. 18 at 4.

As to this issue, the Wisconsin Court of Appeals wrote that Petitioner's "postconviction motion did not demonstrate that he was prejudiced by his trial counsel's alleged deficiency," specifically because Petitioner's "postconviction motion and opening appellate brief" failed to address the requirement of *Batson* that "particular facts or circumstances . . . raise an inference that the State used a peremptory strike to exclude Juror 27 because of his race." *Winston*, 905 N.W.2d, ¶ 17 (quoting *State v. Lamon*, 664 N.W.2d 604 (Wis. 2003)). In so concluding, the Wisconsin Court of Appeals expressly relied on the rule that "[a] postconviction motion alleging ineffective assistance of counsel may be denied without an evidentiary hearing 'if the motion fails to allege sufficient facts to raise a question of fact, presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief.'" *Id.*, ¶ 16 (quoting *State v. Roberson*, 717 N.W.2d 111 (Wis. 2006)). The Wisconsin

Case 2:20-cv-01835-JPS   Filed 03/27/23   Page 16 of 22   Document 34

Court of Appeals subsequently noted that Petitioner had attempted to address this deficiency in his reply brief, but declined to "consider the merits" of his attempt to do so since it "was raised for the first time on appeal." *Id.*, ¶ 18.

Respondent asserts that the "procedural pleading standards" relied on by the Wisconsin Court of Appeals in addressing this ground are "identical to" those which have been consistently held to constitute "an adequate and independent state law ground," even when "applied to federal claims regarding ineffective assistance of counsel." ECF No. 26 at 9. Specifically, Respondent cites *State v. Allen*, 682 N.W.2d 433, ¶ 36 (Wis. 2004), which provides that a petitioner's postconviction motion must "provide[] sufficient material facts . . . that, if true, would entitle him to the relief he seeks," and that the failure to do so allows the court to deny such motion without a hearing. *Allen*, 682 N.W.2d, ¶ 10 ("We have defined sufficiency standards that must be met for both pretrial and postconviction motions before a hearing is granted."). And "'if the defendant fails to allege why and how his postconviction counsel was constitutionally ineffective—that is, if the defendant asserts a mere conclusory allegation that his counsel was ineffective—his "reason" is not sufficient to avoid . . . procedural default." *Whyte v. Winkleski*, 34 F.4th 617, 625 (7th Cir. 2022). In *Whyte*, as here, the Wisconsin Court of Appeals held that the petitioner's postconviction motion alleging ineffective assistance of counsel had "failed to comply with [the applicable] pleading standard" because his pleading "fail[ed] to establish prejudice." *Id.* Indeed, as Respondent represents, such procedural rule constitutes "an adequate and independent state procedural rule." *Id.*

In response, Petitioner writes that he "agrees somewhat" with Respondent's above discussed arguments but asserts that his "pro se claim" on ineffective assistance of trial counsel is "different" than that presented by his postconviction counsel because it includes "new arguments on race and with a gender [] challenge." ECF No. 28 at 3–4. He cites *Warren v. Baenen*, 712 F.3d 1090 (7th Cir. 2013), asserting that "just like in Winston's case, the state court in Warren held that his claim was barred by relitigation, but when looking at the court's decision on direct appeal, it decided a related, but distinct issues." *Id*. at 3.

In *Warren,* the petitioner alleged that his trial counsel was ineffective for failing "to investigate his mental competence." *Warren*, 712 F.3d at 1099. The Seventh Circuit noted that it was "not clear that [petitioner] raised this issue in the state courts." *Id*. Rather, it wrote, petitioner there made the "related, though distinct, argument that [counsel] was ineffective for failing to further investigate his mental health *at the time of the offense*." *Id*. The critical difference, however, is that in *Warren* the Seventh Circuit noted that the state had not "argue[d] default" and had therefore "forfeited the argument." *Id*. at 1100. That is at least partly what enabled the Seventh Circuit to address the petitioner's "related, though distinct" argument regarding ineffective assistance of counsel. *Id*. at 1099. The same is not true here, and that makes all the difference. Respondent here did not forfeit the procedural default argument, and the Court will not act as if Respondent has.

Lastly, Petitioner argues that the Wisconsin Court of Appeals in 2018 (before which Petitioner proceeded pro se) "addressed the merits of [his] pro se trial counsel's ineffectiveness claim" and that accordingly any procedural default thereon "is lifted." ECF No. 28 at 4. As noted previously,

"[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Nunnemaker*, 501 U.S. at 801.

As already discussed, the Wisconsin Court of Appeals, on direct appeal in 2017, did not address the merits of this ground and rather rejected it based on insufficient pleading. *See Winston*, 905 N.W.2d, ¶ 17 ("Winston's postconviction motion and opening appellate brief did not specifically address the second requirement: particular facts or circumstances that raise an inference that the State used a peremptory strike to exclude Juror 27 because of his race."). Similarly, the Wisconsin Court of Appeals in 2018 concluded "as [it] did in Winston's direct appeal, that he has not presented facts supporting a prima facie case of discriminatory intent." ECF No. 28-1 at 7. In other words, it reached the same conclusion it had in its direct appeal—that Petitioner's filing did not meet the applicable pleading standards. And again, this conclusion constitutes "an adequate and independent state procedural rule."[11] *Whyte,* 34 F.4th at 625. The procedural

---

[11]Petitioner insists that since the court discussed "the law from Batson" in determining that he has failed to present sufficient facts, the "application of the state-pleading rule as applied here does not rest on an independent and adequate state ground." ECF No. 28 at 7–9. In support of his argument that it is "clear the court's decision is intertwined in federal law," he cites *Walker v. Pollard*, No. 18-C-0417, 2019 U.S. Dist. LEXIS 150379 (E.D. Wis. Sept. 4, 2019). There, to Petitioner's credit, the court did write that it did "not think that when a court determines that a motion does not contain sufficient facts to enable the court to 'meaningfully assess' a federal claim, the court has made a decision that is independent of federal law." *Walker*, 2019 U.S. Dist. LEXIS 150379, at *30. But the Court is constrained by the Seventh Circuit's more recent decisions clearly holding that application of such procedural rule constitutes "an adequate and independent state procedural rule." *Whyte*, 34 F.4th at 625. For example, the Seventh Circuit has clearly rejected arguments that application of the state pleading rule is "too enmeshed with the merits of the *Strickland* ineffectiveness inquiry to be considered an independent state procedural rule." *Garcia*, 28 F.4th at 770.

bar therefore remains. Accordingly, the Court will grant the motion to dismiss to the extent that it seeks dismissal of Ground Three based on procedural default.

### 4.5    Ground Four

Lastly, Ground Four is based on Petitioner's argument that his postconviction/appellate counsel was ineffective for failing to object to the alleged ineffectiveness of trial counsel. ECF No. 18 at 4. This ground is similarly procedurally defaulted, in part for the reasons already provided above. The Wisconsin Court of Appeals expressly relied on *State v. Allen* in determining that Winston was not entitled to relief. ECF No. 26-4 at 4. It also relied on *Escalona-Naranjo*, writing that a successive postconviction motion must establish a "sufficient reason" for "failing to previously raise any issues that could have been raised in the earlier proceedings." *Id*. at 7. Like *Allen*, reliance on *Escalona-Naranjo* has clearly been held to constitute "an adequate and independent state procedural ground, which forecloses federal review." *Whyte*, 34 F.4th at 624. For these reasons, the Court will grant the motion to dismiss Ground Four based on procedural default.

### 5.    CONCLUSION

For the reasons discussed herein, each of Petitioner's four asserted grounds for relief is barred by procedural default. "We need finality in our litigation." *Escalona-Naranjo*, 517 N.W.2d at 185. "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021). Because the Court is barred from reviewing Petitioner's claims on grounds of procedural default, the Court will grant Respondent's motion to dismiss.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the amended petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). For the reasons discussed above, no reasonable jurists could debate whether Petitioner's grounds were procedurally defaulted. The Court will, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the Clerk of Court shall replace Respondent "Randall R. Hepp" with "Jon Noble" on the docket, as Petitioner is now incarcerated at the Kettle Moraine Correctional Institution under Warden Jon Noble;

**IT IS FURTHER ORDERED** that Respondent's motion to dismiss, ECF No. 25, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's amended petition for a writ of habeas corpus, ECF No. 18, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that Petitioner's request for a certificate of appealability, ECF No. 28 at 13, be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.